Casey, C. J.,
delivered the opinion of the court:
The claimant and Edward Padelford were joint and equal owners of 1,293 bales of cotton, stored in the city of Savannah, Georgia, in December, 1864, when that place was surrendered to the army, of General Sherman. This property, in common with all the cotton found in the city, was taken possession of by the government of the United States, shipped to New York, where it was sold, and the net proceeds, after deducting expenses, have been paid into the treasury of the United States. This action is.brought under the 3d section of the act of March 12, 1863, to recover those proceeds.
By leave of the court the.claimants have so amended their petition as to sever in their prayer for relief, by which they ask for separate *219 ■awards. The evidence that these persons bought this cotton during the years 186], 1862, and 1863, and had it stored in the city of Savannah when that place surrendered to Sherman’s army in December, 1864, is full and satisfactory. This cotton, with nearly forty thousand bales belonging to other parties, was seized by the military authorities, turned over to a treasury agent, shipped to New York. There it was sold, and after deducting charges and expenses of transportation, sale, &c., the balance of the proceeds were paid into the treasury of the United States. ’
The following exhibit, made out by the clerk of Colonel Ransom, the quartermaster at Savannah, who seized and shipped the cotton, shows its shipment:
Exhibit A.
Invoice — i£. L. Molt.
Estimated weight.
Schr. M. A. Berry. 359 to 423. 32,825 lbs.. 65
Schr. W. B. Thomas . . - 304 to 328. 12,625 lbs.. 125
Ship May Flower. 1 to 157, and 267 to 352.122,735 lbs.. 243
Schr. H. J. Raymond .. 306 to 331. 13,130 lbs:. 26
Ship Sandusky. 335 to 408....... 37,370 lbs.. 74
Schr: W. C. Merschon.. 195 to 251, and 258 to 266. 33,330 lbs.. 66
Ship Lawrence. 2,082 to2,094, and 2,134 to 2,200 .. 40,400 lbs.. 80
Steamer Geres. 1 to 77. 38,885lbs-. 80
Bark Atlanta. 645 to S75.116,655 lbs.. 231
Steamer Constitution ... 61 to 206. 73,730 lbs-- 146
Ship L. L. Sturgis-j 1,053 to 1,097 ^ 1,160 to 1,255 > ..131,300 lbs.. 260 1,276 to 1,394 3 -
Bales.. .1,293
The cotton was delivered at New York to Mr. Simeon Draper, who was the agent of the treasury there for receiving and selling captured and abandoned property. The evidence shows that 38,787 bales were received by Mr. Draper, atNew York, and all of it was sold. The average net proceeds amounted to $190 47 per bale, amounting in the whole to $246,277 71. The one-half this-sum, amounting to $123,138 85, is claimed by Mott in this case. We think he proves in a satisfactory manner his ownership to the property, its seizure and sale by the government, and that its proceeds are, now in the United States treasury. His right'to these proceeds depends upon the remaining question to be examined, which is, whether the claimant has proved to our satisfaction “ that he never gave any aid or comfort to the rebellion.”
*220 Upon this subject tbe following witnesses testify on belialf of the plaintiff. An epitome or digest of their testimony is here presented.
Thomas M. Hogan, '(Claimant’s Evidence, p. 78,) postmaster at Columbus, Georgia :
Has known Mr. Mott well for the past six years ; has had frequent interviews, and ev'ery opportunity to know his real views ; has heard him say, during the war, that he would prefer to give up all his slaves rather than that the Union should be dissolved; in consequence of his known opinions there was a strong prejudice against him in the community ; said during the war that there were four acres in Columbus that had never seceded, meaning his residence, and this saying was the talk of the town. He was a mail contractor for the United States at the outbreak of the rebellion, hut refused to continue to carry mails for the confederacy. He did all he could to prevent secession. Witness has never known him to give any aid or comfort to the rebels.
John L. Mustran. (Claimant’s Evidence, p. 82:)
Has known Mr. Mott well for the past six years. If he had given aid or comfort to the rebellion witness would have known it; has never known him to do so, or heard that he had done so.
J. E. Webster, United States assessor. (Claimant’s Evidence, p. 84:)
Witness’s opportunities of knowing Mr. Mott for the past six years have been of the very best kind. Union men were regarded as enemies of the south from the fact that they adhered to the government of the United States. Mr. Mott ranked and was classed among the Union men, open in the expression of his opinions at all times, and no man of either party doubted to which party he belonged. He upheld' the Union party as far as a prudent man could. As far as a prudent man could be, he was open in the expression of his opinions. Mr. Mott has never given aid or comfort to the rebellion. Witness would have known it if he had. There were only about 30 Union men in Columbus.
Richard W. Jacques, United States deputy collector. (Claimant’s Evidence, p. 87 :)
Met Mr. Mott daily during the war ; knew his opinions ; they were against the confederate cause. His opinions were frequently spoken of in the community, and threats made against him. He was classed as a Union man; never gave aid or comfort to the rebellion to witness’s knowledge ; would have heard of it if he had done so.
David L. Bocker. (Claimant’s Evidence, p. 89 :)
Was in almost daily intercourse with Mr. Mott during last half of the *221 war. He frequented witness’s store. Mr. Mott never sympathized with the confederate cause, but regretted .the defeat of the Union arms; expressed himself sanguine of the final success of the federal cause; said he had never seceded, and there was and is a small spot in Georgia not out of the Union — meaning the grounds attached to his dwelling— and would tell witness, when walking there, that he was on a spot that had never seceded. He was considered disloyal to the confederacy by every man and woman in the place. He spoke against the officers of the confederacy in harsh terms; so boldly as to incur danger to himself and associates. He said he would, rather lose his slaves than that the confederacy should succeed.
Benjamin F. Coleman. (Claimant’s Evidence, p. 93 :)
Knew Mr. Mott well during the war. Union men were regarded as traitors to their country. Witness would always, if he could, have closed the war in favor of the Union, and Mr. Mott was as loyal as he, and more outspoken. He could have aided the confederate cause greatly by his influence, but always exercised it against the confederacy. His freedom from molestation, on account of his Union sentiments, was due to his high social position in the community, and the forbearance of the better part, &c.
Joseph A. L. Lee. (Claimant’s Evidence, p. 95 :)
Has had frequent and friendly intercourse with Mr. Mott during the past six years. ■ Witness was the collector under the confederacy. Mr. Mott protested against paying taxes to that government; said that it was not his government; his government was the United States; in fact never did pay, but his son-in-law would come forward and pay. He had a fixed political status in the community; that of loyalty to the United States. His influence was always exercised against the confederacy. The secessionists entertained bitter feelings towards him, induced by his open expressions against the confederate cause and government. When the emancipation proclamation was issued, he said if every negro he had was freed he would cling to the Union. He adhered to the Union party and never left it.
A. M. Allen, late commissary and major, Confederate States army. (Claimant’s Evidence, p. 98 :)
Had charge of that district during the war; was familiar with Mott’s sentiments and conduct. He spoke in favor of the United States and against the confederate government. Witness respected him for the consistency of his conduct. He made many remarks to witness, that if repeated would have instantly caused his arrest by the vigilance committee. His general course of conduct and conversation were *222 always against the confederate government, and always favorable to the United States.
William A. Bedell. (Claimant’s Evidence, p. 101:)
Witness was an original secessionist; never knew Mr. Mott to be regarded as other than a Union man, and regarded him as loyal to the United States as President Lincoln himself. His political position was well understood. Witness has heard it spoken of and denounced bitterly. There were some ten or fifteen belonging to the Union clique as open and avowed as Mr. Mott.
James Johnson. (Claimant’s Evidence, p. 331:)
Has known Mr. Mott 25 years; was intimately acquainted with his sentiments previous to and during the war. He was decidedly and openly opposed to the secession of Georgia and to the war, which he considered madness and folly. He was recognized by every one as a Union man, and was denounced by those in favor of the war. He was a strong Union man during the war, and rejoiced at the conclusion of it. He did no act which could be construed as in aid of the rebellion, except in supplying the wants of his son who was in the rebel service, but without his father’s consent. P. 62: Mr. Mott’s faith in the ultimate triumph of the United States was unfaltering.
General James H. Wilson. (Claimant’s evidence, p. 105 :)
Commanded the cavalry corps of the military division of the Mississippi in April, 1865, and captured Columbus; before coming to-Columbus, heard of Mr. Mott, from both loyal and disloyal parties, as a Union man. These impressions were confirmed on acquaintance with him, and exempted his property from destruction when witness burned Columbus. Witness was in command in Georgia six or ten months after the surrender. Never heard anything to qualify his opinion ; all he has heard confirmed it; gave him a safeguard, such as he never gave except when well assured of the loyalty of the party. Mr. Mott was considered by all the Union men as one of the most loyal men of the country. When the rebellion commenced Mr. Mott had procured a United States flag, intending to hoist it over his house, but the rebels either destroyed it or compelled him to destroy it.
John L. Mustian. (Claimant’s evidence, p. 81:)
Mr. Mott had two sons, one of whom engaged in the confederate service as a lieutenant; the other went to Europe. The elder son, who was of age, entered the service from a sense of duty, having been educated at a military school in Georgia. Mr. Mott was opposed to his entering the service; used every effort to prevent it; was over severe in his opposition ; even unnaturally so. His younger son was *223 a member of some military company before the war, and his father-sent him to Furope, where he remained during the war.
Against this mass of testimony on the part of the claimant, we have not a particle of countervailing evidence on the part of the United States. Nothing whatever to contradict or rebut the unbroken chain in his favor. If such evidence could have been procured it would have doubtless been furnished by the vigilance of those representing the government. The case has been pending for a long time, and was laid over last term to enable the solicitors to re-examine into the case more fully. That they have performed their duty fully we have-no reason to doubt.
With this testimony before us we cannot allow ourselves to entertain a doubt of Mr. Mott’s thorough, genuine loyalty and patriotism-at all times and under all circumstances. In this we all concur, that he has satisfactorily proved “that he never gave any aid or comfort to-the rebellion.”
Having thus clearly proved both his ownership and his loyalty, he has entitled himself to an award for the net proceeds of his property* amounting to the sum of $123,138 85, and this sum we award him.